**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **NICOLAUS HARMAN,** | : | |
| **Petitioner** | : | **CASE NO. 3:17-CR-325** |
| **v.** | : | **(JUDGE MANNION)** |
| **UNITED STATES OF AMERICA,** | : | |
| **Respondent** | : | |

## <u>MEMORANDUM</u>

Pending before the court is petitioner Nicolaus Harman's ("Harman") Motion to Vacate, Set Aside, or Correct his aggregate 190-month sentence of imprisonment imposed on February 15, 2019. (Doc. 49). Harman is currently serving his prison sentence at USP Allenwood in White Deer, Pennsylvania. Harman's petition is filed pursuant to <u>28 U.S.C. §2255</u> and is partially based upon the Supreme Court's decision in <u>United States v. Davis</u>, —— U.S. ——, 139 S.Ct. 2319, 204 L.Ed.2d 757 (2019) (holding that the residual clause of 18 U.S.C. §924(c)(3)(B) is unconstitutionally vague and violated the Due Process Clause). Harman claims that his conviction and consecutive 120 month's imprisonment sentence on Count 4, for a violation of 18 U.S.C. §924(c), must be vacated because his predicate offense of conspiracy to commit Hobbs Act robbery can no longer be considered a crime of violence.

1

As relief, Harman requests the court vacate his conviction and sentence for a violation of §924(c) arguing that it violates his due process rights based on Davis. For the following reasons, Harman's petition, (Doc. 51), will be **Denied in Part**. Despite it arguably being untimely filed, because his Davis claim is clear, it will be **Denied** based upon a merits analysis. However, the court will conduct an evidentiary hearing regarding the timeliness of Harman's ineffective assistance of counsel claim, and if timely, whether his trial counsel failed to consult with him about an appeal and failed to file an appeal as he directed.

## I.    BACKGROUND[1]

On October 24, 2017, a grand jury returned an indictment charging Harman with: Count 1, conspiracy to commit Hobbs Act robbery in violation of 18 U.S.C. §1951(a); Count 2, Hobbs Act robbery in violation of 18 U.S.C. §1951(a) and included Aiding and Abetting, in violation of 18 U.S.C. §2, and Pinkerton liability; Count 3, a drug trafficking conspiracy in violation of Title

---

[1]Since the complete background of this case is stated in the motion and the briefs of the parties, it shall not be fully repeated herein. The factual background of this case is also detailed in the PSR. (Doc. 43, ¶'s 5-7, 10). Suffice it to say Harman admitted that he conspired with others to rob Andrew Bocker, an individual he knew to be a drug dealer who had inherited money, and then robbed him. During the robbery, Harman admitted, he shot Bocker once in each kneecap with a Ruger P-85 9mm handgun and then stole money from him. (PSR ¶5).

21, U.S.C. §846; Count 4, possession and discharge of a firearm in furtherance of the violent crimes, i.e., conspiracy to interfere with commerce by robbery and interference with commerce by robbery, and a drug trafficking crime, as set forth in Counts 1, 2, and 3, in violation of 18 U.S.C. §924(c); and Count 5 possession of a firearm by a convicted felon in violation of 18 U.S.C. §922(g). (Doc. 1).

On August 23, 2018, pursuant to a plea agreement, Harman pled guilty to Counts 1 and 4 of the Indictment. (Docs. 37, 39, 49). Specifically, Count 1 charged that from April 15, 2017 to April 18, 2017, Harman did knowingly and willfully conspire with others to obstruct, delay, and affect interstate commerce and the movement of articles and commodities in commerce by robbery, and to commit and threaten physical violence to victim A.B. in furtherance of a plan and purpose to obstruct, delay, and affect commerce and the movement of commerce by robbery, in violation of 18 U.S.C. §1951(a). Count 4 charged that on April 16, 2017, Harman did knowingly possess, use, carry, brandish and discharge a firearm [i.e., a Ruger P-85 9mm handgun], in furtherance of, and during and in relation to, a violent crime, that is, conspiracy to interfere with commerce by robbery, as charged in Count 1, and interference with commerce by robbery, as charged in Count 2, and in furtherance of, and during and in relation to, a drug trafficking crime, that is the conspiracy to distribute and possess with intent to distribute

3

cocaine, a Schedule II controlled substance, as charged in Count 3, a violation of 18 U.S.C. §924(c). (Doc. 1).

After Harman's guilty plea, the court directed that a presentence investigation report ("PSR") be prepared. The PSR was filed on January 30, 2019. (Doc. 43).

The plea agreement, (Doc. 37), indicated that the charge in Count 1 was "conspiracy to commit robbery" and, that the charge in Count 4 was "possession, use, carry, brandishing, and discharge of a firearm in furtherance of and during and in relation to a crime of violence." (Doc. 37 at 1-2). Also, in the agreement, the parties agreed that with respect to the offense charged in Count 4, "the defendant did carry, use, brandish, and discharge a firearm during and in relation to a crime of violence." (Doc. 37 at 10).

On February 15, 2019, Harman was sentenced to a term of imprisonment of 70 months on Count 1 and a term of 120 months on Count 4, to run consecutively, followed by a 4-year term of supervised release. Counts 2, 3 and 5 were dismissed on motion of the government. (Doc. 49).

4

Harman did not file a notice of appeal with the Third Circuit regarding his judgment of sentence.[2] Harman is currently serving his aggregate 190-months' prison sentence at USP-Allenwood.

On July 24, 2020, Harman's *pro se* petition, pursuant to 28 U.S.C. §2255, to vacate his conviction under §924(c) based on the Davis case, and a brief in support were filed with the court.[3] (Docs. 51 & 52). On July 24, 2020, pursuant to this court's Standing Order 19-08, Harman was appointed counsel from the Federal Public Defender Office, pursuant to the Criminal Justice Act, 18 U.S.C. §3006A, to represent him and to assist him with his motion to vacate predicated on the Davis case. (Doc. 53). On September 1, 2020, Harman's counsel filed a supplemental motion to correct sentence under 28 U.S.C. §2255. (Doc. 54). Specifically, Harman seeks the court to set aside his conviction and 120-month sentence on Count 4 of the Indictment, for a violation of §924(c), alleging that his predicate offense is no longer a crime of violence.

The court directed the government to respond and, on January 21, 2021, the government timely filed its brief in opposition to Harman's motion

---

[2]In his initial motion, Harman alleges that he directed his trial counsel to file an appeal, but claims that his counsel failed to consult with him about an appeal and did not file an appeal. (Doc. 52 at 11).

[3]As discussed below, Harman purportedly signed his *pro se* §2255 motion and delivered to the prison staff for mailing to the court on "Feb. 15, 2020". (Doc. 51 at 13).

and Exhibits. (Docs. 56 & 57). On February 4, 2021, the court appointed new CJA counsel to represent Harman. (Doc. 60). On March 16, 2021, after being granted an extension of time, Harman filed his reply brief. (Doc. 64). On March 31, 2021, the transcript from Harman's August 23, 2018 guilty plea hearing was filed.[4] (Doc. 65).

Having been fully briefed, Harman's motion is now ripe for review.

## II.   STANDARD

When a district court judge imposes a sentence on a defendant who believes "that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, [the defendant] may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. §2255, ¶1; *see* United States v. Eakman, 378 F.3d 294, 297-98 (3d Cir. 2004).

"Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States Attorney, grant a prompt hearing

---

[4]Neither party filed, or requested leave of court to file, a supplemental brief after the transcript was filed. Regardless, as discussed below, the record is clear that Harman's claim based on Davis is without merit.

thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. §2255(b).

A §2255 motion "is addressed to the sound discretion of the district court." United States v. Williams, 615 F.2d 585, 591 (3d Cir. 1980). "[A] motion under 28 U.S.C. §2255 is the proper procedure for a federal prisoner to raise a collateral attack on his or her federal sentence for any error that occurred at or prior to sentencing." Paulino v. U.S., 2010 WL 2545547, *2 (W.D. Pa. June 21, 2010) (citations omitted). "In order to prevail on a §2255 motion to vacate, set aside, or correct a sentence, a Petitioner must show '(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid.'" U.S. v. Bates, 2008 WL 80048, *2 (M.D. Pa. Jan. 7, 2008) (quoting Mallet v. U.S., 334 F.3d 491, 496-97 (6th Cir. 2003)). "The petitioner bears the burden of proof under §2255 and must demonstrate his right to relief by a preponderance of the evidence." U.S. v. Ayers, 938 F.Supp.2d 108, 112 (D. D.C. 2013) (citation omitted).

Additionally, "Section 2255 does not afford a remedy for all errors that may have been made at trial or during sentencing", "[r]ather, Section 2255 is implicated only when the alleged error raises 'a fundamental defect which inherently results in a complete miscarriage of justice.'" Williams v. United

<u>States</u>, 2016 WL 6892375, *2 (M.D. Pa. Nov. 22, 2016) (internal citations omitted).

"If the court determines that the sentence was not authorized by law, was unconstitutional, or is otherwise open to collateral attack, the court may vacate the judgment, resentence the prisoner, or grant the prisoner a new trial as appropriate." <u>United States v. Milan</u>, 2020 WL 6682535, *2 (M.D. Pa. Nov. 12, 2020) (citing 28 U.S.C. §2255(b)).

## III.   DISCUSSION

This court has jurisdiction over Harman's motion under §2255 pursuant to 28 U.S.C. §§1331 and 2241.

At the outset, there is a dispute over whether Harman's §2255 motion was filed within one year of the date on which the <u>Davis</u> decision was issued, (June 24, 2019), and/or the date of his sentence (February 15, 2019) and therefore whether it is timely. *See* <u>Milan</u>, 2020 WL 6682535, *2 ("A federal prisoner may … file a §2255 motion within one year from '[t]he date on which the right asserted was initially recognized by the Supreme Court, if that right was newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review.'") (citing 28 U.S.C. §2255(f)(3)). No doubt that Harman's initial *pro se* §2255 motion was actually filed with the court on July 24, 2020, but he claims that under the prisoner mailbox rule a

*pro se* prisoner's motion is considered filed on the date the prisoner delivers it to prison authorities for mailing not the date it is docketed in court. Harman contends that he signed his motion on "Feb. 15, 2020", and that is the date he gave his motion to BOP officials for mailing. Harman also included a copy of his signed certificate of service dated February 15, 2020, certifying that he gave his motion to the prison staff for mailing to the clerk of court and a signed letter to BOP official Tisheyca Smith indicating that he submitted his motion and brief to the prison mail system on February 15, 2020, for mailing to the clerk of court. (Doc. 52 at 10 and 12). As such, Harman claims that his motion was timely filed since it was delivered to the prison staff for mailing to the court within one year of the date of his sentence and within one year of the Davis case decision.

The government however states that BOP records show that Harman did not deliver his motion to its staff for mailing until July 20, 2020, and that the motion was not filed with the court until July 24, 2020. The government contends that Harman's certification is insufficient since it does not positively show when he submitted his motion to the prison mail system, *see* Nara v. Frank, 264 F.3d 310, 315 n.3 (3d Cir. 2001), and that his copy of his letter to Smith is not marked as received by prison staff. The government, (Doc. 56 at 12), also states:

> USP Allenwood Unit Manager Bradford Vegh conducted a search of Harman's outgoing legal mail for February, June, and July 2020, and

9

found only one item, the envelope containing the instant petition. [Doc. 57] Ex. 2, email from B. Vegh, dated Jan. 20, 2021; Ex. 3, Record of Harman legal mailing, stamped July 20, 2020. That envelope, also filed with Harman's original petition (Doc. 51 at 14), was stamped by the prison when Harman submitted the petition as a legal document to be mailed on July 20, 2020. Ex. 3.

Thus, the government, (Id. at 12-13), states that "USP Allenwood's records show that Harman did not submit any legal mail in February 2020", and that "the U.S. Postal Service website, based on the tracking number barcoded at the top of the envelope, the envelope was received by USPS on July 22, 2020." It also points out that "USP Allenwood experienced no delays in processing of legal mail at any time during 2020, even during the height of the COVID-19 pandemic."

In Moody v. Conroy, 762 Fed.Appx. 71, 73 (3d Cir. 2019), the Third Circuit stated, "[u]nder the Federal Rules of Civil Procedure, a pleading is filed when it is delivered to a clerk or to a judge who agrees to accept it for filing." (citing Fed. R. Civ. P. 5(d)(2)). However, under "[t]he federal 'prisoner mailbox rule[,]' ... a document is deemed filed on the date it is given to prison officials for mailing." *Id*. (quoting Pabon v. Mahanoy, 654 F.3d 385, 391 n. 8 (3d Cir. 2011)). Further, "[i]n the absence of evidence to the contrary, courts may conclude that an inmate places a filing in the hands of prison authorities for mailing on the date that it is signed." *Id*. (citing Jeffries v. United States, 748 F.3d 1310, 1314 (11th Cir. 2014) (assuming, "[a]bsent evidence to the

contrary, ... that a prisoner delivered a filing to prison authorities on the date that he signed it.")).

Here, the government has presented contrary evidence to show that Harman did not submit his §2255 motion for mailing to the court until July 20, 2020. Harman has also submitted evidence showing that he delivered his motion to prison staff on February 15, 2020. The court would normally conduct a hearing on the timeliness issue to resolve the disputed facts in the record as to when the petitioner, who was *pro se* at the relevant time, actually filed his motion. However, even though it appears to the court that Harman's motion was untimely filed and that his evidence allegedly showing that he delivered his motion to the prison staff on February 15, 2020, is insufficient in light of the government's more compelling evidence that he did not deliver his motion to staff until July 20, 2020, the court, in its discretion has reviewed the merits of his <u>Davis</u> claim and because the law on that issue is clear, will deny Harman's §2255 motion on that claim. However, a hearing will be held on the timeliness of filing to the extent it relates to whether petitioner requested and counsel failed to file a direct appeal.

## **THE DAVIS CLAIM**

No doubt that Harman's instant constitutional challenge to §924(c) was not available to him prior to <u>Davis</u>. *See* <u>In re Matthews</u>, 934 F.3d 296 (3d Cir.

2019) (Third Circuit authorized petitioners' second or successive §2255 motions after the Davis case finding that they were timely and that the issue of whether "petitioners' crimes fall under the elements clause or the challenged residual clause is itself a merits inquiry."); United States v. Cunningham, 2020 WL 6504636 (M.D. Pa. Nov. 5, 2020) (after the Davis decision, the Third Circuit authorized defendant's second or successive Section 2255 motion to vacate his conviction and consecutive mandatory minimum sentence under 18 U.S.C. §924(c) claiming that his conviction as to this offense cannot rest on the residual clause of Section 924(c)(3)(B) since it is unconstitutionally vague).

Harman argues that the Hobbs Act conspiracy predicate offense to his 924(c) charge, to which he pled guilty, no longer qualifies as a violent crime after Davis. He alleges that since his predicate offense, namely, conspiracy to commit Hobbs Act robbery, is no longer a crime of violence, the court should set aside his conviction and sentence on Count 4 of the Indictment. In his reply brief, Harman also states that he is entitled to relief under Davis since "the issue in this case is whether conspiracy to commit a Hobbs Act Robbery (as opposed to the robbery itself) is a 'crime of violence.'" (Doc. 64 at 2) (emphasis in original). While the record is clear that Harman did plead to conspiracy to commit Hobbs Act robbery, (s*ee* Doc. 65), however, he is not entitled to relief under Davis.

12

This court in <u>Martinez</u> recently denied a §2255 motion similar to Harman's that was based on <u>Davis</u>. *See* <u>Martinez v. United States</u>, 2021 WL 254112 (M.D. Pa. Jan. 26, 2021). In <u>Martinez</u>, petitioner sought to vacate his conviction under §924(c) as unconstitutional, claiming that since it was based on two underlying predicate offenses and one of those predicate offenses, conspiracy to commit Hobbs Act robbery, no longer qualified as a "crime of violence" under the rule announced by the Supreme Court in <u>Davis</u>, his conviction under §924(c) must be vacated.

As the court in <u>Milan</u>, 2020 WL 6682535, *2, explained:

Under Section 924(c)(1)(A), enhanced punishments apply for any individual who uses, carries, brandishes, or discharges a firearm "during and in relation to any crime of violence." The length of the mandatory minimum sentence depends on whether the defendant uses, carries, or possesses the firearm (5 years); brandishes the firearm (7 years); or discharges the firearm (10 years). 18 U.S.C. §924(c)(1)(A)(i)-(iii). The law further defines a "crime of violence" as a felony that: "(A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another or; (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." 18 U.S.C. §924(c)(3). "These clauses are known as the 'elements clause' and the 'residual clause,' respectively." <u>United States v. Robinson</u>, 844 F.3d 137, 141 (3d Cir. 2016).

In <u>Davis</u>, 139 S.Ct. at 2336, the Supreme Court held that the "residual clause" of §924(c)(3)(B) was unconstitutionally vague. Thus, a predicate crime of violence may now qualify only under §924(c)(3)(A), i.e., the "elements clause." The Supreme Court in <u>Davis</u> then "invalidated a

13

conviction under Section 924(c) that was predicated on conspiracy to commit Hobbs Act Robbery because it relied on the residual clause's definition of a 'crime of violence.'" Higa v. United States, 413 F.Supp.3d 1012, 1015 (D. Hi. 2019). In particular, Davis rejected a Section 924(c) conviction that was predicated on Hobbs Act Conspiracy because Hobbs Act Conspiracy can only be defined as a crime of violence under Section 924(c)'s residual clause." Id. (citing Davis, 139 S. Ct. at 2325, 2336).

Similar to the defendant in Higa and the petitioner in Martinez, Harman essentially argues that as in Davis, "his Section 924(c) conviction was likewise predicated on Hobbs Act Conspiracy and is therefore likewise unconstitutional." Id. In particular, in his counseled supplemental motion, (Doc. 54 at 7), Harman states:

> Mr. Harman was charged in one 924(c) Count with three potential predicate offenses: conspiracy to interfere with commerce by robbery, as charged in Count 1; interference with commerce by robbery, as charged in Count 2; and conspiracy to distribute and possess with intent to distribute cocaine, as charged in Count 3. (Doc. 1 at 5). Section 924(c) lists a crime of violence and a drug trafficking offense separately. But here the government charged both. In the plea agreement, the government identified the offense as "possession, use, carry, brandishing, and discharge of a firearm in furtherance of and during and in relation to a crime of violence." (Doc. 37 at 2). Mr. Harman pleaded guilty to an offense that charged more than one predicate offense but because conspiracy to commit Hobbs Act robbery no longer qualifies as a crime of violence, his conviction and sentence on Count 4 must be vacated.

14

As such, Harman states that since "a conspiracy to commit Hobbs Act robbery does not qualify as a crime of violence under the element's clause", "[his] conviction under Count 4, hinged on conspiracy to commit Hobbs Act robbery, must be vacated." (Id. at 8) (citations omitted).

However, the court in Higa, 413 F.Supp.3d at 1015, explained that:

[defendant] might have been right if his Section 924(c) conviction was, in fact, predicated solely on the Hobbs Act Conspiracy to which he pleaded guilty. The problem for Higa is that his Section 924(c) conviction can also be sustained using the Count 2 Hobbs Act Robbery offense identified in Count 3 of the Indictment as an alternative predicate crime of violence. That is true even though Higa was not convicted of Count 2 and even though Count 2 was dismissed at sentencing.

In fact, courts have now held that a Hobbs Act conspiracy does not qualify as a predicate crime of violence under Section 924(c)(3)(A)'s "elements" clause. *See* United States v. Duhart, 803 Fed.Appx. 267 (11th Cir. 2020) (holding that "conspiracy to commit Hobbs Act robbery does not categorically qualify as a crime of violence under §924(c)(3)'s elements clause") (citation omitted). *See also* Martinez, 2021 WL 254112, *4.

"To prove an offense under §924(c)(1)(A), the government must establish that a defendant used or possessed a firearm in relation to and in furtherance of a 'crime of violence' or a 'drug trafficking crime.'" Duhart, 803 Fed.Appx. at 270 (citing 18 U.S.C. §924(c)(1)(A)). "A conviction under §924(c) 'does not require that a defendant be convicted of, or even charged

with, the predicate offense.'" *Id.* (citation omitted). Thus, it is no moment that Harman was not convicted of a predicate crime of violence, i.e., Hobbs Act robbery, (Count 2), or a drug trafficking crime. (Count 3).

According to the government, "Harman pleaded guilty to a Section 924(c) charge predicated upon Hobbs Act conspiracy and a substantive Hobbs Act robbery." The government states that "Harman admitted factual guilt and entered a guilty plea to the charge of discharging a firearm during and in relation to both a Hobbs Act robbery conspiracy and a Hobbs Act robbery", and that "[he] admitted to sufficient facts to sustain a conviction on Count 2, the substantive Hobbs Act robbery charge, including acknowledging that he shot the victim, an individual Harman targeted because he was a drug dealer, and took money from him."

Harman contends that since the language of the Indictment alleged two predicate offenses and since a conspiracy to commit a Hobbs Act robbery in violation of 18 U.S.C. §1951, to which he pled guilty, served as one of his predicate offenses for his §924(c) conviction, the conviction cannot stand because conspiracy to commit Hobbs Act robbery is not a crime of violence any longer based on Davis.

The court in Higa, 413 F.Supp.3d at 1016, addressed an argument similar to Harman's, and explained:

Higa is correct that a conviction under Section 924(c) based on Hobbs Act Conspiracy should properly be vacated following the Supreme

16

Court's ruling in Davis that Section 924(c)(3)(B) (the "residual clause") is unconstitutional. However, the Government correctly argues that Higa's Section 924(c) conviction is not solely based on his conviction for Hobbs Act Conspiracy or by any other offense dependent on the residual clause. Instead, as set forth in Count 3 of the Indictment, Higa's Section 924(c) conviction is also grounded in Count 2's Hobbs Act Robbery charge, which is a crime of violence under the unchallenged §924(c)(3)(A) elements or force clause.

In the instant case, Harman's Section 924(c) conviction under Count 4 is also based on Count 2's Hobbs Act robbery charge, and he admitted that the Section 924(c) offense was related to his shooting of Bocker in both kneecaps and that his use of the 9mm handgun was in relationship to both charges (Counts 1 and 2), and Hobbs Act robbery "is a crime of violence under the unchallenged §924(c)(3)(A) elements or force clause." *Id.*

There is no doubt that if Harman's conviction under § 924(c) was based only on Hobbs Act conspiracy, it would have to be vacated based on the Supreme Court's ruling in Davis. *See* Duhart, 803 Fed.Appx. at 271. However, Harman's conviction was also predicated on Hobbs Act robbery. Thus, Harman's conviction on Count 4 is valid to the extent it was also predicated on the Hobbs Act robbery crime, which remains a predicate crime under the elements clause of §924(c)(3)(A). *See* Higa, 413 F.Supp.3d at 1016.

The court must examine the record to determine if the predicate offense for Harman's §924(c) conviction was only conspiracy to commit

Hobbs Act robbery or if it was also based on a predicate Hobbs Act robbery crime which can support his conviction under §924(c)(3)'s elements clause. *See* Duhart, *supra*.

The record shows that Harman pled guilty to Count 1 which charged him with a violation of 18 U.S.C. 1951, conspiracy to commit Hobbs Act robbery, and Count 4 a firearm charge under Section 924(c) based on Hobbs Act conspiracy. (Doc. 65). However, the record also reveals that Harman's shooting of Bocker was related to Hobbs Act robbery as well as the conspiracy to commit Hobbs Act robbery.

In Paragraph 13 of Harman's plea agreement, "the parties stipulate and agree that, with respect to the offense charged in Count 4, the Defendant did carry, use, brandish and discharge a firearm, during and in relation to a crime of violence." (Doc. 65 at 10, NT of defendant's guilty plea hearing). The government also summarized what its evidence would show if Harman went to trial, (Id. at 15), and stated:

> On Easter Sunday, April 16, 2017, Nicolaus "Nico" Harman robbed Andrew R. Bocker, and during the course of that robbery, shot Bocker twice, once in each knee cap. Harman, along with three co-conspirators, targeted Bocker because they knew him to be a drug dealer. The conspirators led Bocker to believe they intended to conduct a drug transaction as a ruse to lure him to the basement of a Stroudsburg residence, where Harman produced a handgun and a co-conspirator produced a shotgun, and they made it known this was a robbery.

18

Seconds later, Harman shot Bocker once in the area of his kneecap, and then a second time in the other knee cap. The co-conspirator took cash from Bocker's pockets and the four men fled the screen. Bocker had, apparently, hidden his drug supply in his underwear thwarting the theft of the drug supply.

Investigators, subsequently, recovered the shotgun and the handgun Harman used in the shooting, a Ruger P85 9mm handgun with a high capacity magazine, which matched the caliber of the bullet casings recovered from the scene and the description of witnesses.

Harman substantially agreed with the government's stated summary of the evidence against him. (Id. at 16).

Then, after hearing the underlying facts regarding Count 1 during Harman's plea colloquy, the court and the defendant, (Doc. 65 at 16-17), had the following exchange:

THE COURT: So let me ask you, more particularly, with respect to Count 1. Sometime between April 15 of 2017 and April 18 of 2017, did you agree with others to commit a robbery in which there was physical threatening to a victim in that particular case?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Okay. Did you do that of your own free will? Did anyone force you or coerce you to do that?

THE DEFENDANT: No, Your Honor.

THE COURT: Did you understand, when you were doing that, that it was illegal, that you weren't allowed to, by force or threat, take property or attempt to take property from another individual?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And sometime on or about April 16 of 2017, did you, at that point, possess and carry, brandish and discharge a firearm, in the course of a robbery attempt? Did you do that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: When you did that, again, did you understand that you were possessing a firearm, you knew that it was a gun?

THE DEFENDANT: Yes, sir.

THE COURT: And that you were not allowed to possess or have or use a gun or display or brandish a gun, in a manner that would be a felony offense, in other words, that would be used to force somebody or threaten to force somebody, in order for them to give up property or something of that nature?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Okay. When you did that, did you do that of your own free will?

THE DEFENDANT: Yes.

THE COURT: Did any one force you or coerce you, in any way, to do that?

THE DEFENDANT: No, Your Honor.

THE COURT: So you did it of your own free will?

THE DEFENDANT: Yes.

THE COURT: So Mr. Harman, could I be satisfied that you are, in fact, guilty of Count 1 and Count 4 as charged?

THE DEFENDANT: Yes, Your Honor.

THE COURT: So let me ask you more formally, with respect to Count 1, how do you plead to that count of the indictment?

THE DEFENDANT: Guilty.

THE COURT: With respect to Count 4, how do you plead to that count of the indictment?

THE DEFENDANT: Guilty, Your Honor.

The crime of violence to which Harman pled guilty in Count 1 was based on his role in the actual robbery of Bocker. Thus, the language of Count 1 of the indictment clearly indicates that the predicate offense for the 924(c) charge was interference with commerce by robbery (i.e., Hobbs Act robbery), and the Hobbs Act robbery conspiracy, in violation of 18. U.S.C. §1951, resulting from the robbery incident involving Bocker. Harman admitted his use of the firearm was in relationship to both.

21

"The Third Circuit has explained that Section 924(c) 'requires that the government prove the defendant committed a qualifying offense but does not require that [he] be charged or convicted of such an offense.'" Milan, 2020 WL 6682535, *3 (citations omitted). The court then held in Milan, 2020 WL 6682535, *4, "[g]iven the plain language of the indictment and the admissions gleaned from the record, the Court thus finds that the completed [Hobbs Act] robbery properly underlies Defendant's Section 924(c) conviction." Here, Harman pled guilty to a Section 924(c) charge in which one of the predicate offenses was Hobbs Act robbery and, he admittedly carried a firearm and used the firearm related to the robbery, i.e., in order to force Bocker to give up his property. Further, Harman admitted that he, in fact, discharged his weapon during the robbery and shot Bocker twice, in each of his kneecaps. Based on the above facts, it is clear that Harman's §924(c) conviction was not predicated only on conspiracy to commit Hobbs Act robbery, but was also predicated on a completed Hobbs Act robbery. In fact, during his guilty plea colloquy, Harman admitted to all of the elements of a Hobbs Act robbery and his guilty plea to the §924(c) charge, insofar as it was based on this predicate offense, remains a valid conviction.

Harman also argues in his supplemental motion, filed through counsel, (Doc. 54 at 8-9), that even if the "crime of violence" as referenced in the plea agreement refers to the completed Hobbs Act robbery as charged in Count

2, regarding the §924(c) charge in Count 4, "under the categorical approach, Hobbs Act robbery does not qualify as a crime of violence under the elements clause." However, as the government points out, after Harman filed his supplemental motion in September 2020, every court in this district as well as ten Circuit Courts have disagreed with Harman's assertion.

The government states that Harman's offense of Hobbs Act robbery, under the categorical approach, constitutes a crime of violence under §924(c), since such robbery is defined by its common law definition which does not include threats to intangible personal property.

Harman responds by arguing that while Hobbs Act robbery encompasses the common law definition of robbery, the statutory definition is broader and that property includes intangible property. Thus, he states that "a completed Hobbs Act robbery can be committed by causing fear of future injury to intangible property." (Doc. 54 at 9) (citing Third Cir. Model Crim. Jury Instr. 6.18.1951-5). Harman argues that since Hobbs Act robbery can be committed by threats to devalue some intangible economic interest, "[s]uch threats are not threats of physical force—let alone violent physical force against a person or property as required by the elements clause of Section 924(c)(3)." (Id. at 10). Harman contends that under the categorical approach his §924(c) conviction should be construed as being based on the least culpable act alleged in Count 4, and that "Hobbs Act robbery can be

committed by intimidation, determined objectively from the perspective of the victim and therefore fails the requirement for a crime of violence that physical force be used or threatened intentionally." (Id. at 10-11). As such, Harman contends that Hobbs Act robbery does not categorically qualify as a crime of violence under the elements clause of §924(c), and his conviction on Count 4 should be vacated based on the Davis case. (Id. at 11).

As the court in Milan, 2020 WL 6682535, *2 n. 1, noted:[5]

[F]ollowing Davis, courts use the categorical approach to determine whether an offense constitutes a crime of violence under the elements clause of Section 924(c). Under the categorical approach, courts "compare the elements of the statute under which the defendant was convicted to the [§924(c)] definition of 'crime of violence.'" United States v. Johnson, 899 F.3d 191, 203 (3d Cir. 2018) (citing United States v. Wilson, 880 F.3d 80, 83 (3d Cir. 2018)). In making this determination, courts must "look only to the statutory definitions—i.e., the elements—of a defendant's ... offense, and not to the particular facts underlying the conviction." United States v. Lewis, 720 F.App'x 111, 114 (3d Cir. 2018), *cert. denied*, 138 S. Ct. 2013 (2018) (quoting United States v. Chapman, 866 F.3d 129, 134 (3d Cir. 2017)). "A crime is only a 'crime of violence' if 'the least culpable conduct hypothetically

---

[5]Milan was decided after Harman filed his supplemental motion in this case. *See also* Phillips v. United States, 2021 WL 134389 (M.D. Pa. Jan. 14, 2021) (this court denied petitioner's §2255 motion seeking to vacate his conviction for violating §924(c) claiming that the Hobbs Act robbery was categorically not a crime of violence under the elements clause based on the Davis case); Aquino v. United States, 2021 WL 183521 (M.D. Pa. Jan. 19, 2021) (Upon consideration of the [] persuasive authorities [from the Third Circuit in Monroe which "is in accord with the overwhelming weight of authority from other Circuit Courts of Appeal on this issue"], th[e] Court finds that Hobbs Act robbery qualifies as a crime of violence under Section 924(c)(3)'s 'elements clause.'") (string citations omitted).

necessary to sustain a conviction under the statute' meets the definition." *Id.* (citing <u>Wilson</u>, 880 F.3d at 84).

The definition of Hobbs Act robbery, 18 U.S.C. §1951(b)(1), is:

> The term "robbery" means the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property, or property in his custody or possession, or the person or property of a relative or member of his family or of anyone in his company at the time of the taking or obtaining.

As discussed above, the charge against Harman for Hobbs Act robbery in Count 2 fell squarely under §924(c), since he knowingly used, carried, and brandished a firearm, in furtherance of a crime of violence, namely, the interference with commerce by robbery, when he used actual and threatened force against Bocker during the robbery and shot Bocker twice. As such, Harman's §924(c) conviction was also based a Hobbs Act robbery, as charged in Count 2.

Additionally, as mentioned above, during his guilty plea colloquy, Harman admitted to all of the elements of a completed Hobbs Act robbery. As the court held in <u>Milan</u>, 2020 WL 6682535, *4, "[g]iven the plain language of the indictment and the admissions gleaned from the record, the Court thus finds that the completed [Hobbs Act] robbery properly underlies Defendant's Section 924(c) conviction."

In his supplemental motion, Harman states that following <u>Davis</u>, the Third Circuit did not yet decide whether Hobbs Act robbery in violation of 18

U.S.C. §1951(b) qualifies as a crime of violence under the elements clause, §924(c)(3)(A) (citing United States v. David Copes, C.A. No. 19-1494). However, after his motion was filed, the Third Circuit issued a non-precedential opinion addressing whether Hobbs Act robbery qualifies as a crime of violence for purposes of §924(c) in United States v. Monroe, 837 Fed.Appx. 898 (3d Cir. Jan. 6, 2021).

First, in Monroe, *id*. at 899, the Third Circuit held that "[a]fter Davis, all cases analyzed under the elements clause must apply the categorical approach." The Court then considered the defendants' (Copes and Monroe) argument that "Hobbs Act robbery is … no longer a crime of violence under 18 U.S.C. §924(c) because §924(c)(3)(B) is unconstitutionally vague", and that "their convictions under §924(c)(3) must be vacated because Hobbs Act robbery does not satisfy the elements clause." In particular, the defendants "argue that Hobbs Act robbery does not qualify as a crime of violence because Hobbs Act robbery can be committed without the 'use, attempted use, or threatened use of physical force.'" *Id*.

The Third Circuit in Monroe held that "Hobbs Act robbery is still a crime of violence under the 'elements prong' of §924(c) because Hobbs Act robbery satisfies §924(c)(3)(A) using the categorical approach." *Id*. The Court explained:

> Hobbs Act robbery is defined, in relevant part, as "the unlawful taking or obtaining of personal property from the person or in the presence of

another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property." Section 924(c)(3)(A) defines a "crime of violence" as a felony offense that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another."

Additionally, as the government points out, and as this court has stated in its prior decisions regarding the Davis claim in this case, ten other circuits, have found that Hobbs Act robbery is categorically a crime of violence. *See* Davenport v. United States, 2021 WL 149261, *7 (M.D. Pa. Jan. 15, 2021) (citing United States v. Garcia-Ortiz, 904 F.3d 102 (1st Cir. 2018); United States v. Hill, 890 F.3d 51 (2d Cir. 2018); United States v. Mathis, 932 F.3d 242, 265-66 (4th Cir. 2019); United States v. Buck, 847 F.3d 267, 274-75 (5th Cir. 2017); United States v. Gooch, 850 F.3d 285, 292 (6th Cir. 2017); United States v. Fox, 878 F.3d 574, 579 (7th Cir. 2017); United States v. Jones, 919 F.3d 1064, 1072 (8th Cir. 2019); United States v. Dominguez, 954 F.3d 1251, 1258-62 (9th Cir. 2020) (holding that [under the categorical approach] both Hobbs Act robbery and attempted Hobbs Act robbery are crimes of violence under §924(c) and, noting that "[a]ll of our sister circuits have considered this question too, and have held that Hobbs Act robbery is a crime of violence under the elements clause.") (string citations omitted); United States v. Melgar-Cabrera, 892 F.3d 1053, (10th Cir. 2018); In re St. Fleur, 824 F.3d 1337, 1341 (11th Cir. 2016); United States v. St. Hubert, 909 F.3d 335, 351-53 (11th Cir. 2018)).

Additionally, Harman argues that Hobbs Act robbery does not qualify as a crime of violence under the elements clause since it can also be completed by taking property from another by threatening to do damage to intangible property. He argues that Hobbs Act robbery is not categorically a crime of violence under the §924(c) elements clause since it is possible to commit it without the use of force when the defendant threatens to do damage to intangible property or seeks property that is not possessed by the victim. However, in <u>Monroe</u>, 2021 WL 50161, 899-900, the Third Circuit addressed a similar argument and found no merit to it, stating:

> Copes and Monroe argue that the least culpable conduct necessary to commit Hobbs Act robbery does not meet the 924(c)(3)(A) definition. They present various non-violent hypotheticals as alternative means of committing Hobbs Act robbery through fear of injury to intangible property: making a restauranteur hand over money by threatening to scream rat in front of customers, making a shareholder hand over a wallet by threatening to start a boycott of the company on social media, or threatening pecuniary injury. These hypotheticals misconstrue the Hobbs Act robbery definition, and they misconstrue the definition of "physical force" under Section 924(c)(3)(A).

> Initially, we note that the defendants' hypotheticals do not present "more than the application of legal imagination." They do not point to any cases where courts have applied Hobbs Act robbery in the manner hypothesized. Moreover, their failure to do so is not surprising. Their hypotheticals do not constitute the type of "injury" contemplated by the "fear of injury" included in Hobbs Act robbery. We have previously accepted dictionary definitions of "injure" to mean "to inflict bodily hurt on" or "[t]o do harm to, damage, or impair. To hurt or wound, as the person." We have concluded that these definitions "necessarily threaten[ ] the use of physical force." Thus, "'fear of injury' cannot occur without at least a threat of physical force" sufficient to satisfy the

28

elements clause for the "crime of violence" definition. In addition, there is evidence that "Congress intended the 'physical force' element to be satisfied by ... fear of injury."

(internal citations and footnotes omitted).

The court finds that the recent <u>Monroe</u> case, as well as the above cited cases from the ten other circuits, to be persuasive and again concurs with their findings that Hobbs Act robbery is categorically a crime of violence under the elements clause. As the government indicates, "many of the cases relied on by the defense in support of [his motion] appear to be cases where the defendants were prosecuted for Hobbs Act *extortion*, rather than Hobbs Act *robbery*." (Doc. 56 at 14-15) (citing <u>Scheidler v. National Organization of Women, Inc</u>., 537 U.S. 393, 404-05 (2003); <u>United States v. Local 560 of the Int'l Brotherhood of Teamsters, Chauffeurs, Warehousemen, and Helpers of America</u>, 780 F.2d 267, 281 (3d Cir. 1986)). In any event, the court does not find Harman's argument to be convincing. *See* <u>United States v. Walker</u>, 473 F.3d 71, 78 (3d Cir. 2007) ("Congress's 'overriding purpose' in passing Section 924(c) 'was to combat the increasing use of guns to commit federal felonies.' The chief sponsor of this provision explained that 'the provision seeks to persuade the man who is tempted to commit a Federal felony to leave his gun at home.'") (internal citations omitted). *See also* <u>Monroe</u>, 2021 WL 50161, 900 (the Third Circuit stated that "[defendants] use the wrong definition of physical force under §924(c)(3)(A)", and that "[t]he Supreme

29

Court has concluded that 'physical force' means violent force—that is, force capable of causing physical pain or injury to another person.'") (citations omitted).

As such, the court finds that Harman was charged with Hobbs Act robbery in Count 2 which served as a predicate offense for his Section 924(c) charge in Count 4, and that this offense is a crime of violence under elements clause, 18 U.S.C. §924(c)(3)(A). *See* Monroe, 2021 WL 50161, 900-01 ("When applying the appropriate 'fear of injury' definition outlined above to the correct definition of physical force, Hobbs Act robbery is clearly a crime of violence."); Phillips v. United States, 2021 WL 134389; Aquino v. United States, 2021 WL 183521. Harman's conviction under 18 U.S.C. §924(c), remains valid after Davis since it was supported by a predicate Hobbs Act robbery crime.

## **DUPLICIOUSNESS**

Finally, the court finds no merit to Harman's belated challenge to Count 4 in his supplemental motion, (Doc. 54 at 7 n. 6), on the grounds that the Section 924(c) charge was duplicitous since it was based on two predicate offenses, a Hobbs Act robbery conspiracy and a crime of violence (i.e., Hobbs Act robbery). As the government states, (Doc 56 at 15), "Harman pleaded guilty to a Section 924(c) charge predicated upon Hobbs Act

conspiracy and a substantive Hobbs Act robbery, [and] [o]nce Harman entered his guilty plea, he waived any claim he might have had that the count was duplicitous." *See* United States v. Walker, 789 F.App'x 241, 244-45 (2d Cir. 2019) (rejecting direct appeal from guilty plea where §924(c) conviction was based on both conspiracy and substantive Hobbs Act robbery as the predicate crimes of violence and defendant failed to challenge indictment on duplicity grounds before pleading guilty).

In Higa, 413 F.Supp.3d at 1017, the court addressed this same "duplicitousness" argument and stated:

> Higa also argues impermissible "duplicitousness" in the Indictment because the Government pleaded both the Hobbs Act Robbery and Hobbs Act Conspiracy as predicate crimes of violence for the Section 924(c) charge in Count 3 of the Indictment. Because this argument challenges the language of the Indictment itself, Higa has already waived it. United States v. Brizan, 709 F.3d 864, 866-867 (9th Cir. 2013); *see also* Tollett v. Henderson, 411 U.S. 258, 267, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973) ("When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea."). Moreover, Davis does not newly recognize a right related to defective indictments within the meaning of Section 2255(f)(3) such that Higa can rely on it to make what would otherwise be an untimely Section 2255 argument. In short, whether or not the Government erred by including both Hobbs Act Conspiracy and Hobbs Act Robbery as the basis of the Section 924(c) charge in Count 3 is immaterial in the face of Higa's plea agreement waiver, and Davis provides no quarter for a timely collateral challenge to the Indictment on that basis.

Thus, the court finds no merit to Harman's claim based on Davis in his §2255 motion and supplement and, it will deny his request to vacate his conviction and sentence on Count 4 of the Indictment. The court also finds that Harman is not entitled to an evidentiary hearing because the record conclusively establishes that he is not entitled to the relief sought in his §2255 motion based on the Davis case. *See* Monroe, 837 Fed.Appx. at 899-900; Higa, *supra*; Martinez, *supra*. Therefore, the court, in its discretion, finds no reason to hold an evidentiary hearing on the stated claim.

## INEFFECTIVENESS OF COUNSEL

Finally, Harman claims that his trial counsel was ineffective for failing to file a direct appeal of his judgment of sentence as he requested him to do. Harman submitted his unsigned Declaration, (Doc. 52 at 11), averring that he instructed his trial counsel to file a notice of appeal challenging his sentence and that trial counsel stated he would get back to him to discuss an appeal at a later time. However, Harman states that trial counsel never got back to him and never consulted with him about his appeal.

Both the government and Harman's counsel concur that if the §2255 motion was timely filed, the stated ineffective assistance of counsel claim requires an evidentiary hearing to resolve. The court also concurs with the assessment of both counsel. *See* Solis v. United States, 252 F.3d 289 (3d

Cir. 2001) (The Third Circuit held that a hearing was required on petitioner's §2255 motion ineffective assistance of counsel claim since, "Solis claims that he directed his attorney to file an appeal, but that his attorney failed to comply. On its face, this creates a question of fact whether Solis directed his attorney to file an appeal. If he did, then Solis's Sixth Amendment right to counsel was violated by his counsel's failure to act."). The court will therefore hold a hearing to determine whether the underlying filing was timely, and if so, whether trial counsel failed to file a requested direct appeal

## IV.   CERTIFICATE OF APPEALABILITY

A petitioner may not file an appeal from a final order unless a district or circuit judge issues a certificate of appealability ("COA") pursuant to 28 U.S.C. §2253(c). A COA shall not issue unless "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). The petitioner must show that "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 327 (2003); *see also* Slack v. McDaniel, 529 U.S. 473, 484 (2000). Here, a COA will not issue regrading Harman's claim under Davis because he has shown neither the denial of a constitutional right nor that jurists of reason would

disagree with this court's resolution of this claim. *See* <u>Monroe</u>, *supra*; <u>Martinez</u>, *supra*.


## V.      CONCLUSION

Based on the foregoing, the court **DENIES** Harman's §2255 motion **(Doc. 51)**, and supplemental motion, **(Doc. 54)**, on its merits regarding his claim to invalidate his conviction on Count 4 under <u>Davis</u>.

The court will conduct an evidentiary hearing on Harman's remaining ineffective assistance of counsel claim regarding his trial counsel's alleged failure to consult with him about an appeal, his failure to file an appeal as directed and the timeliness of that filing.




                              <u>s/ *Malachy E. Mannion*</u>
                              **MALACHY E. MANNION**
                              **United States District Judge**


**DATE: April 26, 2021**
17-325-01

34