**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **NICOLAUS HARMAN,** | : | |
| **Petitioner** | : | **CASE NO. 3:17-CR-325** |
| **v.** | : | **(JUDGE MANNION)** |
| **UNITED STATES OF AMERICA,** | : | |
| **Respondent** | : | |

## MEMORANDUM

Pending before the court is petitioner Nicolaus Harman's ("Harman") Motion to Vacate, Set Aside, or Correct his aggregate 190-month sentence of imprisonment imposed on February 15, 2019. (Doc. 49). Harman's original *pro se* petition, (Doc. 51), as well as his counseled supplement, (Docs. 54), were filed pursuant to 28 U.S.C. §2255. To the extent that Harman's filings were based upon the Supreme Court's decision in United States v. Davis, –—— U.S. ———, 139 S.Ct. 2319, 204 L.Ed.2d 757 (2019) (holding that the residual clause of 18 U.S.C. §924(c)(3)(B) is unconstitutionally vague and violated the Due Process Clause), the court denied them on their merits on April 26, 2021. (Docs. 66 & 67).

However, the court found that it had to conduct an evidentiary hearing regarding the timeliness of Harman's remaining ineffective assistance of counsel claim. The court indicated that if Harman's motion was timely, then

1

it would have to decide whether his trial counsel failed to consult with him about an appeal of his judgment of sentence and failed to file an appeal as the defendant allegedly directed.

## I.   BACKGROUND[1]

On February 15, 2019, after pleading guilty to Counts 1 and 4 of the Indictment, Harman was sentenced to a term of imprisonment of 70 months on Count 1 and, a term of 120 months on Count 4, to run consecutively, followed by a 4-year term of supervised release. Harman did not file a notice of appeal with the Third Circuit regarding his judgment of sentence.[2] Harman is currently serving his aggregate 190-month prison sentence at USP-Allenwood, in White Deer, Pennsylvania, and his projected release date is November 30, 2030.

---

[1]Since the complete background of this case is stated in the court's April 26, 2021 Memorandum, as well as the motion and the briefs of the parties, it shall not be fully repeated herein. Also, as previously noted, the factual background of this case is detailed in the PSR. (Doc. 43, ¶'s 5-7, 10). Suffice it to say Harman admitted that he conspired with others to rob Andrew Bocker, an individual he knew to be a drug dealer who had inherited money, and then robbed him. During the robbery, Harman admitted he shot Bocker once in each kneecap with a Ruger P-85 9mm handgun and then stole money from him. (PSR ¶5).

[2]In his initial motion, Harman alleges that he directed his trial counsel to file an appeal, but that his counsel failed to consult with him about an appeal and did not file an appeal. (Doc. 52 at 11).

2

On July 24, 2020, Harman's *pro se* motion, pursuant to 28 U.S.C. §2255, to vacate his sentence, and a brief in support were filed with the court.[3] (Docs. 51 & 52). On July 24, 2020, pursuant to this court's Standing Order 19-8, Harman was appointed counsel from the Federal Public Defender ("FPD") Office, pursuant to the Criminal Justice Act, 18 U.S.C. §3006A, to represent him and to assist him with his motion to vacate predicated on the <u>Davis</u> case. (Doc. 53). On September 1, 2020, Harman's FPD counsel filed a supplemental motion to correct sentence under 28 U.S.C. §2255. (Doc. 54).

On January 21, 2021, the government filed its brief in opposition to Harman's motion and Exhibits. (Docs. 56 & 57). On February 4, 2021, the court appointed new CJA counsel to represent Harman. (Doc. 60).

On April 26, 2021, the court denied Harman's §2255 motion and supplement, (Docs. 51 & 54), based on <u>Davis</u>. (Docs. 66 & 67). The court also stated that it would hold an evidentiary hearing to determine whether Harman's motion was timely filed as to his remaining ineffective assistance of counsel claim, and if so, whether his trial counsel failed to file an alleged requested direct appeal.

---

[3] As discussed below, Harman purportedly signed his *pro se* §2255 motion and brief and delivered them to the prison staff for mailing to the court on "Feb. 15, 2020". (Doc. 51 at 13).

On July 19, 2021, the court conducted the evidentiary hearing in this matter. The court held the record open until July 23, 2021, to allow the parties to submit additional evidence regarding the timeliness issue and Harman's remaining ineffective assistance of counsel claim.

On July 19, 2021, Harman filed additional evidence consisting, in relevant part, of a copy of this court's Standing Order 19-8, appointing Harman counsel from the FPD to represent him with respect to his Davis claim raised in his §2255 motion. (Doc. 71). Harman also submitted a copy of the envelope addressed to him mailed from the M.D. PA Office of the Clerk of Court which contained the court's Standing Order 19-8. Notably, the envelope indicates, in the top right corner where the U.S. Postage is affixed to it, that it was mailed from the Clerk's Office to Harman on "07/24/2020", the date that Harman's §2255 motion was received by the Clerk's Office and filed of record. (Doc. 51).

On July 21, 2021, the government filed a letter to the court as additional support for its contention the Harman's motion was not timely filed. (Doc. 70).

The record is now closed in this case. Based on the following, the court finds that Harman's motion pursuant to 28 U.S.C. §2255 and his remaining ineffective assistance of counsel claim must be dismissed as untimely.

4

## II.   STANDARD[4]

Harman claims that his trial counsel was ineffective for failing to file a direct appeal of his judgment of sentence as he requested him to do. Harman submitted his unsigned Declaration, (Doc. 52 at 11), averring that he instructed his trial counsel to file a notice of appeal challenging his sentence and that trial counsel stated he would get back to him to discuss an appeal at a later time. However, Harman states that his trial counsel never got back to him and never consulted with him about his appeal.

Harman's instant ineffective assistance of counsel claim falls within the purview of §2255 since it challenges the validity of his sentence. U.S. v. Bates, 2008 WL 80048, *3 (M.D. Pa. Jan. 7, 2008) ("Claims of ineffective assistance of counsel may be brought in the first instance by way of a §2255 motion regardless of whether the movant could have asserted the claim on direct appeal.") (citing Massaro v. U.S., 538 U.S. 500, 504, 123 S.Ct. 1690 (2003)).

In United States v. Doss, 2017 WL 1709397, *3 (M.D. Pa. May 3, 2017), certificate of appealability denied, 2017 WL 5952261 (3d Cir. Aug. 25, 2017), the court addressed the type of *Strickland* analysis which the court must generally conduct when a defendant raises an ineffective assistance claim

---

[4]Since the court stated the standard regarding a motion filed under 28 U.S.C. §2255 in its April 26, 2021 Memorandum, it does not fully repeat it herein.

5

based upon counsel's failure to file an appeal pursuant to Roe v. Flores-Ortega, 528 U.S. 470 (2000). *See* Harrington v. Gillis, 456 F.3d 118, 125 (3d Cir. 2006). The Doss Court, *id.*, then stated:

> In *Flores-Ortega*, the Supreme Court held that defense counsel must consult with their client about an appeal in situations where a rational defendant would want to appeal or where the defendant actually expressed interest in appealing. Flores-Ortega, 528 U.S. at 480. The Court defined "consult" as "advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." *Id.* at 478.
>
> The first step in the *Flores-Ortega* analysis is to determine whether counsel consulted with his client about an appeal. Harrington, 456 F.3d at 125. When counsel consults with the defendant, failure to follow the defendant's express instructions to file an appeal is professionally unreasonable and satisfies the first *Strickland* prong. *See id.* (quoting Flores-Ortega, 528 U.S. at 478). When counsel does not consult with the defendant, representation will be deemed deficient if a rational defendant would want to appeal or if the defendant actually expressed interest in appealing. Flores-Ortega, 528 U.S. at 480.
>
> To satisfy the second *Strickland* prong, a defendant must show a reasonable probability that "but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Id.* at 484. Factors relevant to this inquiry include whether the defendant pled guilty, whether he received a bargained-for sentence, and whether he waived some appellate rights. *Id.* at 480. Failure to appeal despite the defendant's express instructions to do so is presumptively prejudicial under *Flores-Ortega*. *Id.* at 484.

## III.   DISCUSSION

This court has jurisdiction over Harman's motion based on 28 U.S.C. §2255.

6

The court will first address the timeliness issue since it is a threshold matter. *See* U.S. v. Wolfe, 767 Fed.Appx. 390 (3d Cir. 2019).

Here, Harman is challenging his 190-month prison sentence by claiming that his trial counsel was ineffective for failing to file a direct appeal as he requested him to do. Thus, he is pursuing his proper avenue of relief *via* a section 2255 motion filed in this court since he was convicted and sentenced here. *See* §2255 ¶ 5 (the motion must be filed in "the court which sentenced him"). However, §2255 contains a statute of limitations which the government contends has expired in Harman's case.

Specifically, in order for a §2255 motion to be effective, it must be timely filed within the restrictions set forth in §2255(f). The Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996, imposes a one-year statute of limitations which is triggered by the latest of four events: (1) "the date on which the judgment becomes final"; (2) "the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action"; (3) "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review" or (4) "the date on

7

which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. §2255(f).

Harman contends that his §2255 motion alleging ineffective assistance of counsel is timely under §2255(f)(1) since he filed his motion on February 15, 2020, within one year of the date his sentence became final.

Here, there is a dispute over whether Harman's §2255 motion was filed within one year of the date that his February 15, 2019 sentence became final and therefore whether it is timely. *See* 28 U.S.C. §2255(f)(1). In this context, when an appeal is not filed, a judgment of conviction becomes final on the date on which the time for filing a timely direct appeal expires. *See* Kapral v. United States, 166 F.3d 565, 577 (3d Cir. 1999). Harman's judgment of conviction was entered on February 15, 2019. (Doc. 49). Harman had fourteen days to file a notice of appeal. *See* Fed.R.App.P.4(b)(1)(A)(i). No notice of appeal was filed on behalf of Harman and, therefore, his judgment of conviction became final on March 1, 2019. Accordingly, Harman had one year from March 1, 2019, or until March 1, 2020, to file a timely Section 2255 motion.

No doubt that Harman's initial *pro se* §2255 motion was actually filed with the court on July 24, 2020, but he claims that under the prisoner mailbox rule a *pro se* prisoner's motion is considered filed on the date the prisoner delivers it to prison authorities for mailing, not the date it is docketed in court.

Harman testified at the hearing that he did not remember the exact time and date that he gave his §2255 motion to prison staff at USP Allenwood for mailing since he and all the other inmates were on lockdown due to the COVID-19 pandemic. Harman stated that he signed his motion and the brief in support and, on the same day, slid them under his cell door when prison staff announced they were picking up legal mail to mail out. However, when his counsel showed him his initial §2255 motion and brief, (Docs. 51 & 52, D's Exs. 1 & 2), to refresh his recollection, Harman reviewed the date on them and then testified that he signed his documents on "February 15, 2020." He also stated that this was the date he gave his documents to prison officials for mailing by sliding them under his cell door. Harman also stated that there have been mistakes at the prison with respect to the mail of inmates and, that on occasion mail is not sent out properly and it is not received properly. However, Harman did not offer any evidence to support his contention.

Harman stated on cross exam that he did not write his §2255 motion and brief, rather he stated that someone else prepared them and that he just signed them.

As the court previously indicated in its April 26, 2021 Memorandum, (Doc. 66), Harman also submitted a copy of his signed certificate of service dated February 15, 2020, certifying that he gave his §2255 motion to the prison staff for mailing to the Clerk of Court, and his signed letter addressed

9

to BOP official Tisheyca Smith indicating that he submitted his motion and brief to the prison mail system on February 15, 2020 for mailing to the Clerk of Court. (Doc. 52 at 10 and 12). As such, Harman claims that his motion was timely filed since it was delivered to the prison staff for mailing to the court within one year of the date that his sentence became final.

As mentioned in the court's prior decision, the government contends that BOP records show that Harman did not deliver his motion to its staff for mailing until July 20, 2020, and that the motion was not filed with the court until July 24, 2020. The government contends that Harman's certification is insufficient since it does not positively show when he submitted his motion to the prison mail system, *see* Nara v. Frank, 264 F.3d 310, 315 n.3 (3d Cir. 2001), and that his copy of his letter to Smith is not marked as received by prison staff and could have been given any date by Harman. The government, (Doc. 56 at 12), also stated:

> USP Allenwood Unit Manager Bradford Vegh conducted a search of Harman's outgoing legal mail for February, June, and July 2020, and found only one item, the envelope containing the instant petition. [Doc. 57] Ex. 2, email from B. Vegh, dated Jan. 20, 2021; [Doc. 57] Ex. 3, Record of Harman legal mailing, stamped July 20, 2020. That envelope, also filed with Harman's original petition, (Doc. 51 at 14), was stamped by the prison when Harman submitted the petition as a legal document to be mailed on July 20, 2020. [Doc. 57] Ex. 3.

Thus, the government, (Id. at 12-13), stated that "USP Allenwood's records show that Harman did not submit any legal mail in February 2020",

and that "the U.S. Postal Service ["USPS"] website, based on the tracking number barcoded at the top of the envelope [containing Harman's legal mail], the envelope was received by USPS [in White Deer PA] on July 2[0], 2020." (*See* Doc. 57, Govt. Exs. 2 & 3). The government also pointed out that "USP Allenwood experienced no delays in processing of legal mail at any time during 2020, even during the height of the COVID-19 pandemic." (Id.).

To bolster its prior arguments, the government called Vegh to testify at the hearing. Vegh is presently a Unit Manger at USP Allenwood and he was previously the mailroom supervisor. Vegh knows the BOP's polices and procedures for prison mail at FCC Allenwood, including legal mail, which the government introduced at the hearing as Govt. Ex. 1. (Doc. 72). Vegh stated that during the COVID-19 pandemic, the inmates were on lockdown. Nonetheless, Vegh testified that on a daily basis, Monday through Friday, the CO's in each Unit would ask inmates if they had any legal mail. The inmates would then slide their sealed legal mail under their cell door for the CO to pick up. On the same day, the CO would then take the legal mail to the mail room, and there the mail would all be stamped with the date that the mail was received from the inmate. Significantly, Vegh testified that even during the pandemic and the lockdown, February through March 2020, there was no hold up or delay of any prisoner legal mail, i.e., the mail was continuously

11

picked up daily every week day from the inmates and date-stamped the day the mail was received from them.

Vegh also testified that he searched the prison mail records from February through July of 2020, and that he found one mailing from Harman during this period which was received by prison staff from the defendant on "JUL 20 2020." (Govt. Ex. 2) (Doc. 73) (*See also* Doc. 57, Exs. 2 & 3). Although the defendant's name was slightly misspelled in the prison mail book as "Harmon", it contained the defendant's correct BOP inmate register number, "76059-067." *See* https://www.bop.gov/mobile/find_inmate/byname.jsp. The mail book also indicated that Harman's legal mail that was received by prison staff on July 20, 2020, was addressed to the Clerk's Office in the Scranton, PA, federal building. Further, the mail book contained a USPS dated stamp of July 20, 2020 as well as a tracking number for Harman's legal mail, namely, number 70192280000070732370. (*See* Govt. Ex. 2) (Doc. 73 at 3).

Vegh testified that, during the time period from February through June of 2020, there was no other legal mail that prison staff received from Harman besides his July 20, 2020 mail.

Vegh also identified a copy of Harman's envelope addressed to the Clerk of Court's Office in the Scranton federal building which was date stamped on July 20, 2020. (Govt. Ex. 3) (Doc. 73 at 4). Also on the Exhibit

12

was a copy of the USPS certified mail receipt for Harman's July 20, 2020 legal mail which contained his BOP Register number and the Clerk of Court's address. The Exhibit also indicates that Harman's legal mail was received by the USPS on July 20, 2020, the same day that the prison staff received it from Harman.

Moreover, Vegh testified that he went to the USPS website to check the tracking number for Harman's July 20, 2020 legal mail that was entered in the prison mail logbook. The USPS website indicated that Harman's legal mail with the tracking number 70192280000070732370 left the U.S. Post Office ("USPO") in White Deer, PA, where USP Allenwood is located, on July 22, 2020, and was delivered and picked up in the Scranton, PA, Post Office at 9:00 am, on July 24, 2020. (Govt. Ex. 4) (Doc. 73 at 1-2). The court also takes judicial notice that the Clerk of Court in Scranton, PA, filed Harman's *pro se* §2255 motion and support brief, (Docs. 51 & 52), on July 24, 2020, the day that they were received at the Post Office.

The court also finds that the copy of Standing Order 19-8 and the envelope dated stamped "07/24/2020" addressed to Harman from the Clerk's Office in Scranton, PA, which defense counsel submitted on July 19, 2021, (Doc. 71), further bolsters the government's evidence by consistently showing that when Harman's §2255 motion was received by the Clerk's Office in the morning on July 24, 2020, staff mailed out Harman the Standing

13

Order on the same day. If Harman had actually given his §2255 motion to prison staff on February 15, 2020 as he claims, and if it was then mailed out from the prison at that time, then the Clerk's Office would have sent him the Standing Order soon after February 15, 2020, and not on July 24, 2020. Significantly, there was not a shred of evidence presented that prison staff actually received Harman's motion on February 15, 2020, and then failed to deliver it to the mail room until July 20, 2020.

Additionally, while Vegh testified at the hearing that generally legal mail is brought to the USPO in White Deer, PA, the day after it is picked up by prison staff from the inmates, he did not rule out the possibility that the inmate's mail could be brought to the USPO on the same day that staff received it from the inmate. In order to clarify the matter, the court ordered the government to find out whether the White Deer Post Office would have stamped the certified mail log and Harman's envelope, (*see* Govt. Exs. 2 & 3) (Doc. 73), with any date other than the date indicated on the date stamp, i.e., "JUL 20 2020." The government submitted its response to the court's inquiry on July 20, 2021, (Doc. 70), and represented that the answer to the court's question was "no, [and that] postal employees would only apply the correct date when stamping th[e] [prison mail] log."  The government also explained in its letter, (Doc. 70), as follows:

> According to Postmaster Jan Miller, [], postal employees are required by law to stamp the log only with the correct date; that is, the date on

which the book is stamped. Postmaster Miller was familiar with the practice in the Allenwood mailroom to stamp the date when legal mail was received on the face of the mail, but said that the Post Office does not follow the same practice of "back dating" the log. When asked how the [prison] mailroom's stamped date might match the Post Office's stamped date, as it does on [Govt.] Ex. 2 and Ex. 3, the only explanation she could offer was that perhaps Mr. Harman had turned in his legal mail early enough in the day that it was processed in the mailroom and brought to the Post Office on the same day. In any event Postmaster Miller said that if the stamp on the log says July 20, 2020, it was stamped on July 20, 2020.

In Moody v. Conroy, 762 Fed.Appx. 71, 73 (3d Cir. 2019), the Third Circuit stated, "[u]nder the Federal Rules of Civil Procedure, a pleading is filed when it is delivered to a clerk or to a judge who agrees to accept it for filing." (citing Fed. R. Civ. P. 5(d)(2)). However, under "[t]he federal 'prisoner mailbox rule[,]' ... a document is deemed filed on the date it is given to prison officials for mailing." *Id*. (quoting Pabon v. Mahanoy, 654 F.3d 385, 391 n. 8 (3d Cir. 2011)). Further, "[i]n the absence of evidence to the contrary, courts may conclude that an inmate places a filing in the hands of prison authorities for mailing on the date that it is signed." *Id*. (citing Jeffries v. United States, 748 F.3d 1310, 1314 (11th Cir. 2014) (assuming, "[a]bsent evidence to the contrary, ... that a prisoner delivered a filing to prison authorities on the date that he signed it.")).

Here, the government has presented overwhelming evidence to show that Harman did not submit his §2255 motion for mailing to the court until

July 20, 2020, when he delivered it to prison staff. Besides his less-than-convincing testimony, Harman has failed to submit any evidence showing that he delivered his motion to prison staff on February 15, 2020, the day that he allegedly signed it. In short, based on all of the evidence, the court finds Harman's testimony that he signed his §2255 motion on February 15, 2020 is less than credible and does not give it any weight.

The court has conducted a hearing on the timeliness issue and now resolves the facts in the record as to when Harman actually filed his motion. The court finds that Harman's motion was untimely filed and that his testimony that he delivered his motion to the prison staff on February 15, 2020 is insufficient in light of the government's more compelling and uncontroverted evidence that he did not deliver his motion to staff until July 20, 2020.

Accordingly, the one-year statute of limitations for Harman's motion to vacate expired regarding his ineffective assistance of trial counsel claim on March 1, 2021, which was over four months before Harman filed his motion on July 20, 2020. Thus, pursuant to 28 U.S.C. §2255(f)(1), Harman's §2255 motion is untimely and must be dismissed unless he can demonstrate that he is entitled to equitable tolling.

With respect to equitable tolling, a movant can only qualify for equitable tolling by demonstrating "(1) that he has been pursuing his rights diligently,

16

and (2) some extraordinary circumstance stood in his way and prevented timely filing." Holland v. Florida, 560 U.S. 637, 649 (2010) (internal quotation marks omitted). Equitable tolling is not applicable where the late filing is due to a movant's excusable neglect. Schlueter v. Varner, 384 F.3d 69, 77 (3d Cir. 2004). The Third Circuit has limited equitable tolling of Section 2255's limitations period to the following circumstances:

> (1) where the defendant actively misled the plaintiff;
>
> (2) where the plaintiff was in some extraordinary way prevented from asserting his rights; or
>
> (3) where the plaintiff timely asserted his rights mistakenly in the wrong forum.

Jones v. Morton, 195 F.3d 153, 159 (3d Cir. 1999). The movant bears the burden of establishing that he is entitled to benefit from equitable tolling. *See* Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005).

Here, Harman has not met his burden of establishing that he is entitled to equitable tolling since he has not attempted to show that any of the above circumstances apply. Harman maintained that he delivered his motion to prison staff on the date he alleged he signed it, February 15, 2020. The court has found, however, that Harman actually delivered his §2255 motion to prison staff for mailing on July 20, 2020, and he has provided no explanation whatsoever for his late filings. Further, Harman has not requested that the

court grant him the benefit of equitable tolling. Accordingly, the court declines to apply equitable tolling to render Harman's §2255 motion timely filed.

Since Harman's §2255 motion was untimely filed, the merits of his remaining ineffective assistance of counsel claim need not be addressed.

## IV.    CERTIFICATE OF APPEALABILITY

A petitioner may not file an appeal from a final order unless a district or circuit judge issues a certificate of appealability ("COA") pursuant to 28 U.S.C. §2253(c). A COA shall not issue unless "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). The petitioner must show that "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 327 (2003); *see also* Slack v. McDaniel, 529 U.S. 473, 484 (2000). Here, the court concludes that jurists of reason would not find the procedural disposition of this case, regarding the untimeliness of Harman's §2255 motion, debatable. Accordingly, the court will not issue a COA.

18

## V.   CONCLUSION

Based on the foregoing, the court **DISMISSES AS UNTIMELY** Harman's §2255 motion **(Doc. 51)**, and supplemental motion, **(Doc. 54)**, regarding his remaining ineffective assistance of counsel claim. An appropriate Order will issue.



s/*Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**


**DATE: August 4, 2021**
17-325-02

19